ORDER DISMISSING PETITION, REFUNDING FILING FEE
KATHARINE ENGLISH, Chief Judge.
ISSUE: This matter came before the Court on the Tribe’s Motion to Set Aside the Order for Investigative Report. Stepfather Petitioner, and Mother, have petitioned for stepfather to adopt mother’s child. The father consents. The Tribe’s claim is that the Ordinance relied upon by the Petitioners is applicable only to dependent children in the temporary custody of the Tribe, and does not confer upon private parties a right to Petition for adoption.
ANALYSIS:

Factual basis.

This case is one of three that has presented this issue to the Court. Of the three, this case is the most compelling because of the factual basis upon which it rests.
Stepfather is the Petitioner, seeking to adopt B.G., age 8, the child of his wife (the Mother) and the biological Father.
Stepfather has been a parent figure to B.G. since the child was one year old. Stepfather lived with B.G. and his mother, *82 and assumed parental duties for B.G., for seven years before he and mother were married this year. He continues in a parental role to the child.
The child’s biological father signed a Consent to the adoption on August 9, 1999.
The mother is an enrolled member of the Confederated Tribes of the Grand Ronde, as is the child.

Legal basis.

Stepfather, by and through his attorney, Caitlin Glass of the Grand Ronde Legal Services, and using a packet of instructions and forms provided by the Tribal Court, filed the Petition for Adoption of B.G. on August 24, 1999. The legal basis for the filing is the Indian Child Welfare Ordinance, Sections 710(c) and 714(b).
In his Petition, Stepfather alleged, as required, that 1) he is an adult, at least ten year’s older than the minor to be adopted; and 2) that the child is an enrolled member of the Grand Ronde Tribe. Stepfather-submitted proof of Tribal membership of the mother- and child; the biological father’s signed consent was attached. All of the packet requirements were met.
The Court, on September 17, 1999, ordered the Indian Child Welfare Program to prepare the investigative report as required by the Ordinance, section 714(b)(4).
On Dec. 16, 1999, the ICW Program, by and through the Tribal Attorney, filed a Motion to Set Aside the Order for an Investigative Report. The Tribe opposes the Petition based on the argument that the sections upon which the Petitioner relies, interpreted within the full context of the Indian Child Welfare Ordinance, do not apply to step-parent adoptions. Therefore, an Order for an Investigative Report is ill-founded.

Relevant sections of the Ordinal ice.

The ICW Ordinance is an Ordinance entitled, in full, the “INDIAN CHILD WELFARE ORDINANCE.” It is divided into several sections.
The first section, Sec.7.10, entitled “GENERAL PROVISIONS”, sets out definitions, and addresses jurisdictional, reporting, and procedural issues in child abuse and neglect cases. It includes Section (b) DEFINITIONS, and Section (c) JURISDICTION OF THE TRIBAL COURT.
Section 7.10(b)(15) defines Grand Ronde Child as: “Any child of Grand Ronde descent within the service area, and all children who are members of the Grand Ronde Tribe or eligible for membership in the Tribe wherever they are found.”
Section 7.10 (c) states: “Unless otherwise defined, the jurisdiction of the Tribe over child welfare matters shall extend to all children who are within the jurisdiction of the Court under this ordinance and who reside or are domiciled within the service area of the Tribe as that term is defined by federal and tribal law. The tribal court shall also have jurisdiction over any Grand Ronde child who resides beyond the service area of the Tribe ...”
“The Ti-ibe shall have jurisdiction overall Grand Ronde children.”
The second section, Sec. 7. 11, entitled “YOUTH IN NEED OF CARE/EMERGENCY CUSTODY”, addresses what is required of the Indian Child Welfare Program when its employees take allegedly abused or neglected children into Tribal custody. This section sets out procedures for taking emergency custody of a child, securing an emergency Court order, placing the child, and moving forward to an adjudicatory hearing on a filed Petition.
The third section, entitled “DISPOSI-TIONAL AND PLACEMENT PROVI *83 SIONS” (Sec.7.12), sets out l)dispositional alternatives once a child has been taken into Tribal custody, 2) the requirement that the cases of children in Tribal custody be regularly reviewed in Court, and 3) the provisions for making a permanent plan for the children.
“PARENTAL TERMINATION” (Sec. 713) is the fourth section, which addresses the procedure and basis for termination of parental rights.
Section 714 is entitled “LONG TERM PLACEMENT PROVISIONS” and has subsections (a) “GUARDIANSHIP”, and (b) “ADOPTION”, which subsections set forth the methods of obtaining guardianship and adoption.
Subsection 714(b), ADOPTION, states, in part:
“(1) Who May Adopt and Under What Conditions:
(A) Policy: It is the policy of the Tribe that its children should be adopted only as a matter of last resort, and alternative long-term placements such as guardianship and long-term foster placement should first be considered which maintain the connection between the child and the parent and family . . .
(B) Who May Adopt: The following persons may adopt:
1. Any adult may file a petition to adopt;
2. In the case of married persons maintaining a home together, both spouses shall be petitioners except that, if one of the spouses is a natural parent of the minor to be adopted, the natural parent shall not be a party to the petition ...
(C) Conditicms to Adoption
1. The welfare of the child shall be primary .. .
(D)Order of Preference for Adoption: Preference in adoption shall be given in the following order:
1. Tribal member adoptive parents; at least one person of any adoptive couple must be a tribal member ...
Subsection (3) sets out the required contents of the Petition, [all requirements of which were met by Stepfather.]
Sections 7.15, 7.16. And 7.17 set out provisions, respectively, regarding jurisdiction over these dependent children, juvenile offenders (delinquents), and miscellaneous matters, such as emancipation, filiation, school attendance and the like. DISCUSSION:
Stepfather secured a packet of materials from the Tribal Court. These materials included forms for him to fill out to apply for - an adoption. In the packet was an instruction sheet which set forth for Stepfather the steps he must take to apply to the Court for an adoption. He followed those instructions to the letter, accurately filled out the forms, and properly filed those forms with the Court. He paid the required filing fee.
The packet which Stepfather secured from the Tribal Court was developed by a former judge, with the assistance of a former clerk. No attorney or representative from the Tribal attorney’s office could recall the time period during which the packets were prepared. No tribal court record exists showing that the forms had ever actually been used. It is the Tribal Court’s responsibility to assure that materials offered to Tribal members are accurate and useable. The Tribal Court failed in this regard.
Stepfather’s Petition, on its face, and interpreted in light of selectively cited ordinance provisions, appears to confer upon him the right to apply to this Court for an adoption of his wife’s son.
*84 Indeed, justice seems to call out for that result. The mother and child are Tribal members. The biological father consents to the adoption. The step-father, mother, and child have lived together for seven years. The step-father is in a long-term and stable parental relationship with the child. The best interests of the child will be satisfied by the adoption. Tribal Court could effectively and efficiently grant the adoption. Tribal member’s would be thereby served by Tribal Court, without resort to the foreign jurisdiction of the state. The procedure would be timely, efficient, and inexpensive for the family.
Still, no call for justice is sufficient to allow the Court to proceed, if the ordinance does not allow it. And the Court hereby finds that the Indian Child Welfare Ordinance does not apply to private, stepparent adoptions.
Read as a whole, it is clear that the ICW Ordinance was enacted to address the issues of abused and neglected children whose parents have failed them and who have thereby come into the custody of the Tribal Court. The Ordinance promotes rehabilitation of the parents, reunification of the family, and approves termination of parental lights and adoption of the children only “as a matter of last resort.” The provision in the Ordinance which addresses adoption is intended to be used as a possible permanent plan for children in the custody of the Tribe, children who cannot be returned to their parents.
That is clearly not the case here. B.G. is a loved and well-cared for child, in a stable, loving home with his mother and step-father, both of whom appear to be capable parents.
The Court has encouraged the mother and stepfather to pursue this adoption in state court. Furthermore, as the Petitioner filed this matter in good faith, and by use of a packet prepared some time ago by the Tribal Court apparently for such a purpose, the Petitioner’s filing fee is to be refunded.
FINDINGS:
The Court has reviewed the memo and other documents filed by the Tribe, has heai’d argument, and has engaged the Tribal attorney and the attorney for the Petitioner in lengthy discussion of this matter.
The Court hereby finds the adoption ordinance upon which this Petition is based is not applicable in a private, stepparent adoption.
ORDER
1. The Petition is dismissed
2. The Petitioner’s filing fee is to be refunded.